UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISMAIL A. ABUHALTAM,

Plaintiff,

Case No. 1:25-cv-1677

Hon. Robert J. Jonker

v.

AYMAN MUSTAFA ABUHALTAM,

Defendant.
______________________________/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Plaintiff Ismail A. Abuhaltam ("Ismail") against Ayman Mustafa Abuhaltam ("Ayman"), Plaintiff's cousin. The parties have been fighting in the Michigan and Indiana state courts, and this court, for several years. Plaintiff's present complaint seeks to rehash issues that have animated several lawsuits that preceded this one and even two lawsuits filed after this one, including the following:

1. *Haltam (Ayman) v. Abu-Haltam (Ismail)*, No. 71D07-2304-PL-000107 (St. Joseph Cnty. Sup. Ct.), final judgment entered on May 20, 2025, in favor of Plaintiff for $395,551.00;

2. *Muck v. Abuhaltam (Ismail)*, No. 2025-0000002495-NZ (Ingham Cnty. Cir. Ct.), litigation ongoing, motion for summary disposition scheduled for hearing Sept. 30, 2026;

3. *Haltam (Ayman) v. Abuhaltam (Ismail)*, No. 2024-00000642CZ-CZ (Ingham Cnty Cir. Ct.), action to collect Indiana judgment, debtor's exam held Apr. 24, 2026;

4. *Al Qassimi Academy et al. v. Albuhatam (Ismail)*, No. 1:23-cv-289 (W.D. Mich.)—judgment on the pleadings in favor of defendant entered Oct. 17, 2025;

5. *Abuhaltam (Ismail) v. Abuhaltam et al. (14 family members including Ayman),* No. 1:26-cv-1 (W.D. Mich.)—judgment dismissing complaint for lack of subject matter jurisdiction entered May. 16, 2026; and,

6. *Abuhaltam (Ayman) v. Abuhaltam et al. (2 family members including Ismail)*, No. 2026-0000000609-CZ (Ingham Cnty. Cir. Ct.)—summary disposition granted Apr. 30, 2026).

This matter is now before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. For the reasons set forth below, the undersigned recommends that Defendant's motion to dismiss be granted and that Plaintiff's complaint be dismissed with prejudice.

## I. Factual and procedural background

### A. Plaintiff's complaint

Plaintiff's complaint spans fifteen pages; he attaches more than 250 additional pages of exhibits as well as a flash drive including additional evidence.[1] Plaintiff alleges that Defendant, on November 21, 2025, demanded that Omar Taha Abu Haltam retract a sworn affidavit that was prepared for Plaintiff's benefit in Plaintiff's appeal of the St. Joseph Superior Court judgment. (Affidavit, ECF No. 9-3, PageID.401–404.) In the affidavit, the affiant swears that he is familiar with Defendant's voice and that the 69 audio recordings that are at the heart of the Indiana lawsuit (and all of the other lawsuits) are, in fact, recordings of Defendant's voice. In the letter, Defendant demands a retraction from the affiant because: it is false; the affiant has no personal knowledge of Defendant's voice; the recording was not Defendant's voice; and the affidavit has caused and continues to cause Defendant significant legal harm. (ECF No. 3-1,

[1] The additional material includes "a wealth of evidence, including audio recordings, death threats, conflicting testimonies, signed agreements and contracts (which the signatories later denied), and details of the five malicious lawsuits filed in the states of Michigan and Indiana to silence the whistleblower, [Plaintiff], who was threatened across states and from overseas." (ECF No. 9-5, PageID.452.)

PageID.290–291.) Plaintiff interprets Defendant's demand for a retraction as "an implicit legally binding admission that the voice *is* [Defendant's], and therefore, that every one of [Defendant's] ' lawsuits was based on fraud." (Compl., ECF No. 1, PageID.2–3 (italics emphasis in original).) Plaintiff perceives the demand was an admission because "**if the voice was never [Defendant's] why threaten a witness to stop saying it?**" (*Id.*, PageID.2 (bold emphasis in original).)[2]

Plaintiff alleges that the 69 recordings prompted him to uncover a massive 40-year criminal enterprise by the leaders of the Al-Qasemi religious order. (Compl., ECF No. 1, PageID.4.) That discovery, in turn, triggered a global conspiracy of over 100 individuals, including Defendant, to engage in a public dehumanization campaign against Plaintiff as well as a "Blood Festival" calling for Plaintiff's death, held on July 16, 2024, in Hebron, Palestine, at the Al-Qasemi family council. (*Id.*) On August 3, 2024, Plaintiff was targeted in a failed assassination attempt. (*Id.*)

Based on the alleged sequence of events, Plaintiff contends that Defendant has perpetrated a fraud on multiple courts, including the St. Joseph County Superior Court. Plaintiff designates this claim Count I. (*Id.*, PageID.5.) Plaintiff asks the Court to declare the resulting $395,000.00 judgment void because it was procured by fraud. (*Id.*, PageID.8.)

[2] Plaintiff starts from the premise that a person who makes a false statement will demand the retraction of a claim that the original statement is false. From that point, Plaintiff reasons that because Defendant demanded the retraction of a claim that his original statement was false, Defendant's original statement is, necessarily, false. Setting aside the questionable validity of the premise, Plaintiff's allegation depends on the logical fallacy of "affirming the consequent." *See, e.g., Indemnity Ins. Co. of North America v. W & T Offshore, Inc.*, 756 F.3d 347, 355 n.5 (5th Cir. 2014); *Gilliam v. Nevada Power Co.,* 488 F.3d 1189, 1196 n.7 (9th Cir. 2007); *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n.3 (4th Cir. 1995); *United Tel. Co. of Carolinas, Inc. v. F.C.C.*, 559 F.2d 720, 725–26 (D.C.Cir. 1977). Of course, a person who makes a true statement might also demand the retraction of a claim that his original statement was false.

Plaintiff next claims that Defendant's subsequent letters threatening the witnesses who exposed the fraud constitute witness tampering in violation of 18 U.S.C. § 1512. (*Id.*, PageID.5–6.) Plaintiff designates this claim as Count II. (*Id.*) As Plaintiff's remedy for this claim and all of the remaining claims, Plaintiff seeks compensatory and punitive damages in an amount of at least $10,000,000.00, a permanent injunction prohibiting Defendant from filing any further litigation against Plaintiff, and a protective temporary restraining order, preliminary injunction, and permanent injunction, prohibiting Defendant from "contacting, threatening, harassing, or intimidating" Plaintiff or the Abuhaltam family members who provided affidavits in the Indiana case.[3] (*Id.*, PageID.8; *see also* Mot., ECF No. 3.)

Plaintiff next contends that Defendant's four malicious lawsuits against Plaintiff, each based on the foundational lie that the voice in the 69 recordings is not Defendant's, constitute malicious prosecution (Count IV) and abuse of process (Count V) under state law. (Compl., ECF No. 1, PageID.7.)

Plaintiff also claims that the conduct described above constitutes a pattern of racketeering activity—a pattern that includes wire fraud, mail fraud, and witness tampering—conducted through an enterprise affecting interstate commerce in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count VI). (*Id.*) Moreover, Plaintiff asserts that Defendant conspired with other to so conduct the affairs of the RICO enterprise (Count VII). (*Id.*) Plaintiff's RICO allegations, in their entirety, consist of two sentences. (*Id.*) Plaintiff then invites the reader to see the 69 audio recordings and the Blood Festival video to support the RICO claims. (*Id.*)

[3] Plaintiff's complaint allegations requesting the protective order are designated as Count III. (Compl., ECF No. 1, PageID.6–7.) That same request is made in Plaintiff's motion for temporary restraining order and preliminary injunction. (ECF No. 3.)

Plaintiff avers that Defendant committed the state-law tort of intentional infliction of emotional distress when he incited violence, filed malicious lawsuits, and tampered with witnesses (Count VIII). (*Id.*, PageID.8.) Plaintiff states that the 69 audio recordings that include Defendant's false statements accusing Plaintiff of criminal conduct are defamatory under state law (Count IX). (*Id.*) And, finally, Plaintiff claims that Defendant participated in a civil conspiracy with over 100 individuals to silence, defame, and harm the Plaintiff (Count X). (*Id.*)

Plaintiff's initial filing continues with a partially completed Court-approved form complaint. (Compl., ECF No. 1, PageID.11–15.) In that portion of the complaint, Plaintiff indicates that the Court's jurisdiction is in part based on a federal question under 28 U.S.C. § 1331 and in part based on diversity of citizenship under 28 U.S.C. § 1332. (*Id.*, PageID.13–14.)

**B. Defendant's response**

On December 23, 2025, Defendant responded to Plaintiff's complaint with a motion to dismiss. (Mot., ECF No. 7.) Defendant asks the Court to dismiss the complaint for lack of subject matter jurisdiction because the complaint depends entirely on voiding the Indiana state court judgment and, thus, violates the *Rooker-Feldman* doctrine. (*Id.*, PageID.328.) Defendant also contends that the Court is without jurisdiction because Plaintiff lacks Article III standing. (*Id.*)

Defendant also claims the following:

1. The Court may not exercise personal jurisdiction over Plaintiff. Fed. R. Civ. P. 12(b)(2).
2. Plaintiff filed suit in an improper venue. Fed. R. Civ. P. 12(b)(3).
3. Plaintiff has failed to state a claim under 18 U.S.C. § 1512 because there is no private right of action under that statute. Plaintiff has failed to plead a RICO claim with sufficient particularity. Plaintiff has failed to properly state an state-law tort claims. Fed. R. Civ. P. 12(b)(6).

(Mot., ECF No. 7, PageID.329.)

Plaintiff filed a response brief opposing Defendant's motion. (ECF No. 8.) In that response, Plaintiff chose not to "entertain the Defendant's legal fantasies," choosing instead to "methodically dismantle his arguments by exposing the five pillars of his criminal syndicate." (*Id.*, PageID.334.) In the methodical dismantling, however, Plaintiff does not address Defendant's 12(b)(1) *Rooker-Feldman* subject matter jurisdiction argument nor does he address Defendant's Rule 12(b)(6) arguments.

**C. Plaintiff's motion to supplement**

Plaintiff's opposing brief was not his only response to Defendant's motion to dismiss. Plaintiff also filed a "motion to supplement the record and notice of related case." (ECF No. 9, PageID.339.) By way of this motion, Plaintiff advised the Court that he had filed another federal complaint that was "organically and inextricably linked to the facts and parties before this Court" in the instant case. (*Id.*, PageID.340.) Plaintiff also explained that the RICO violation at issue in this case was "an integral part of the broader Pattern of Racketeering Activity described in" Plaintiff's new complaint. (*Id.*, PageID.341.) Plaintiff asked the Court to supplement his allegations in this case "with the facts and allegations contained in the new RICO complaint." (*Id.*)

Plaintiff's new complaint appears in *Abuhaltam (Ismail) v. Albuhatam et al. (14 family members including Ayman)*, No. 1:26-cv-1 (W.D. Mich.). It includes all of the allegations and submitted "evidence" that are at issue in this suit, but presents all of the alleged wrongful conduct only as part of the racketeering activity that gives rise to the new RICO claim. Put differently, in the new complaint, Plaintiff did not allege multiple state law tort claims even though he offered the underlying conduct as predicate acts that formed the alleged pattern of racketeering activity. Thus, in the new complaint, the jurisdictional basis is limited to "federal question" jurisdiction.

As noted above, by opinion and judgment entered March 16, 2026, the Court dismissed Plaintiff's RICO complaint. The Court dismissed the case because of "'lack of subject matter jurisdiction pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure . . . [because its] allegations . . . are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.'" *Abuhaltam v. Abuhaltam*, No. 1:26-cv-1, 2026 WL 995038, at *1 (W.D.Mich. Jan. 21, 2026) (quoting *Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999)), *R&R adopted*, 2026 WL 717973 (Mar. 16, 2026).

Plaintiff denominates his motion as a motion to supplement. Under Federal Rule of Civil Procedure 15(d), a subsequent "pleading setting out any transaction, occurrence, or event that happened after the date of the [initial] pleading" is a supplement. Fed. R. Civ. P. 15(d). Filing such a "supplement" requires leave of court. *Id*. Plaintiff's proposed "supplement" does not, on its face, set out any transaction, occurrence, or event that happened in the 25 days that passed between the date he filed his initial complaint and the date he filed his motion. Therefore, Plaintiff's proposed additional allegations and attachments are not supplements, they are amendments.

Rule 15(a) provides:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a). Plaintiff's initial complaint was a "pleading . . . to which a responsive pleading is required." *Id*. Plaintiff's motion to supplement was filed ten days after Defendant filed his motion to dismiss under Rule 12(b). Accordingly, Plaintiff was entitled to amend his pleading

as a matter of course. Plaintiff's motion to supplement, which is actually a motion to amend, is properly denied as unnecessary.

In *Clark v. Johnston*, 413, F.App'x 804 (6th Cir. 2011), the court explained a significant typical consequence of filing an amended pleading. "When a pleading is amended pursuant to Federal Rule of Civil Procedure 15(a), the amended pleading supersedes the original pleading, i.e., 'the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.'" *Id.* at 811 (citations omitted). That rule is not absolute. "[i]f . . . the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Id*. at 811–12 (citations omitted).

Here it is apparent that Plaintiff did not intend his amended pleading to supersede his original pleading. It is clear that Plaintiff intended his new allegations to supplement in the generic sense of "add to," rather than "update to include subsequent events" as contemplated by Rule 15(d). For that reason, the Court will consider the allegations and attachments relating to Plaintiff's initial complaint and his proposed supplement as the operative complaint.

**II. Subject matter jurisdiction**

"Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*. (internal citations omitted). Federal subject-matter jurisdiction "can never be waived or forfeited," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), and "courts are obligated to consider *sua sponte* whether they have such jurisdiction," *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir.

2014). In this regard, Fed. R. Civ. P. 12(h)(3) provides that "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697, 701 (6th Cir. 1978) ("Rule 12(h)(3) preserves and recognizes the court's time-honored obligation, even *sua sponte*, to dismiss any action over which it has no subject-matter jurisdiction").

### A. *Rooker-Feldman* doctrine

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T.M. v. University of Maryland Medical System, Corp.*, 146 S.Ct. 1739, 1743–44 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). The Supreme Court explained the two bases of reasoning behind the doctrine as follows:

> The first is that, when plaintiffs "essentially invit[e] federal courts of first instance to review and reverse unfavorable state-court judgments," they are seeking an exercise of appellate jurisdiction. *See Exxon*, 544 U.S., at 283–284 (describing *Rooker* and *Feldman*). The second is that such "appellate jurisdiction to reverse or modify a state-court judgment is lodged, . . . by 28 U.S.C. § 1257, exclusively in this Court." 544 U.S., at 283. Federal district courts, by contrast, are "empowered to exercise [only] original, not appellate, jurisdiction."

*Id*. at 1747 (parallel citations omitted). The Sixth Circuit has described the *Rooker-Feldman* inquiry as "straightforward:"

> We look at the "source of the injury the plaintiff alleges in the federal complaint," and if the source is anything other than "the state-court judgment itself," then *Rooker-Feldman* does not apply. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020); *see also id*. at 409 (Sutton, C.J., concurring) ("Absent

> a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop.").

*Kitchen v. Whitmer*, 106 F.4th 525, 535 (6th Cir. 2024). Applying that straightforward approach, because Plaintiff expressly seeks review of the final Indiana state court judgment, the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction.

The doctrine does not, however, necessarily sweep away the Court's subject matter jurisdiction with regard to the entire complaint. "The *Rooker-Feldman* doctrine is properly applied on a claim-by-claim basis . . . ." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018). In keeping with the narrow view of the doctrine espoused in *Exxon* and emphasized by Judge Sutton in his *VanderKodde* concurrence, one claim plainly barred by the doctrine is Plaintiff's claim seeking to void the Indiana judgment.

But the Sixth Circuit has interpreted *Rooker-Feldm*an to be broader than just a pleading rule regarding the requested relief. In *RLR Investments, LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380 (6th Cir. 2021), the panel explained that "the test is whether the plaintiff's injury stems from the state court judgment . . . [here, Plaintiff] would only prevail on its § 1983 claims or its constitutional claims if the state court were wrong, so the Order is the source of the injury." *Id*. at 388 (citations omitted).

In the transcript of the St. Joseph County Superior Court hearing regarding damages the trial court considered comparative fault between Ayman and Ismail. In other words, the court explored whether the dispute between the parties that resulted in the alleged damage to Ayman's reputation was the fault of Ayman, Ismail, or both. Plaintiff contends that Ayman provided sworn testimony that the voice on the audio recordings was not his. Plaintiff complains that the court ignored Ayman's statements in the audio recordings. That is apparently reflected in the court's

determination regarding comparative fault. The court awarded 100% of the claimed damages to Ayman.

Many of Plaintiff's claims ask this Court to ignore the implicit foundation of the Indiana state court judgment: the determination that it is not Defendant's voice on the 69 audio recordings. With regard to Plaintiff's Count I, alleging fraud on the court, Count II, alleging witness tampering, Count III requesting a protective order (along with Plaintiff's motion for temporary restraining order and preliminary injunction (ECF No. 3)), Count IV, alleging malicious prosecution, Count V, alleging abuse of process, and Count IX, regarding defamation, Plaintiff could only prevail if the state court judgment is wrong. Under the authority of *RLR Investments*, therefore, the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction over those claims as well.[4]

**B. Implausible RICO claims**

In *Abuhaltam*, 2026 WL 995038, the Court dismissed Plaintiff's RICO allegations for lack of subject matter jurisdiction pursuant to 12(b)(1) because the allegations were "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion." *Id.*, at *1 (W.D.Mich. Jan. 21, 2026) (quoting *Apple* 183 F.3d at 479). The Court explained that Plaintiff failed to allege a pattern of racketeering, failed to allege predicate acts, failed to allege

[4] The viability of Plaintiff's other claims, Count VI, RICO, Count VII, RICO Conspiracy, Count VIII, intentional infliction of emotional distress, and Count X, civil conspiracy also depends, in part, on rejecting the foundation of the Indiana state court judgment. But those claims also include other aspects that appear to be unrelated to the determination of the identity of the speaker on the 69 audio recordings. Accordingly, the undersigned concludes that *Rooker-Feldman* does not deprive the Court of subject matter jurisdiction with regard to the entirety of those claims. Nonetheless, to the extent those claims depend on a determination that the voice on the recordings is Ayman's, the Court is deprived of subject matter jurisdiction with regard to those claims as well.

continuity, and failed to allege RICO injury. *Id*. at *2–5. The very same RICO allegations are again before the Court in this action. That circumstance certainly implicates the doctrine of *res judicata*.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 92008). The Court explained:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id*., at 748–749. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154 (1979).

*Taylor*, 553 U.S. at 892 (parallel citations and footnote omitted).

For the Court's prior ruling to preclude revisiting the subject matter jurisdiction issue anew in this case:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Stryker v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 681 F.3d 819, 825 (6th Cir. 2012). It is beyond dispute that the first, second, and third requirements are met here. The language of the third requirement, however, gives one pause.

Certainly, the RICO claim itself was not decided on the merits. The dismissal was based on a lack of subject matter jurisdiction and such dismissals are dismissals without prejudice. *White's Landing Fisheries, Inc. v. Ohio Dep't of Natural Resources*, 174 F.4th 493, 502 (6th Cir.

2026) (stating that "because [the] grounds for affirmance is the district court's lack of subject matter jurisdiction, Koch's claims should be dismissed without prejudice"). But the fact that the dismissal was without prejudice does not foreclose preclusive effect. "The Supreme Court and courts of appeals have long recognized that 'principles of res judicata apply to questions of jurisdiction as well as to other issues.'" *Outdoor One Communications LLC v. Charter Twp. of Canton, Mich.*, 155 F.4th 776, 781 (6th Cir. 2025) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 166 (1932)). Even though "'a dismissal for lack of jurisdiction does not constitute an adjudication upon the merits, it does constitute a binding determination on the jurisdictional question, which is not subject to collateral attack.'" *Id.* (quoting *Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir. 1977)).

The undersigned concludes that the Court's prior decision dismissing the RICO claims for lack of subject matter jurisdiction is entitled to preclusive effect in this case. Accordingly, Plaintiff's RICO claims are properly dismissed for lack of subject matter jurisdiction.[5]

## III. Failure to state a claim

Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

[5] Moreover, the determination that the Court lacked subject matter jurisdiction was founded upon Plaintiff's utter failure to state a plausible RICO claim with regard to multiple elements. A determination that a complaint fails to state a claim upon which relief may be granted also "operates as an adjudication on the merits for issue and claim preclusion purposes." *Cobbs v. Katona*, 8 F.App'x 437, 438 (6th Cir. 2001) (citing *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 917 (6th Cir.1986)). This Court has already preclusively determined that Plaintiff's RICO allegations, which are identical in both cases, fail to state a claim. Plaintiff's RICO allegations would be properly dismissed on that ground as well.

> draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff's complaint is replete with unsupported inferences, legal argument, and legal conclusions. It reads far more like a brief than "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).[6] By way of example, the first four paragraphs of Plaintiff's complaint allege the following:

---

[6] Plaintiff simply ignored the instructions on the form complaint he filed which state:

> Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.

(Compl., ECF No. 1, PageID.14.)

> 1. This case begins with a signed confession. Less than two weeks ago, on **November 21, 2025**, the Defendant, Ayman Abuhaltam ("Ayman"), committed a fatal, unforced error. He sent a threatening letter to a key witness, Omar Taha Abu Haltam, demanding the retraction of a sworn affidavit. That affidavit identified Ayman 's voice in 69 audio recordings inciting violence and murder against the Plaintiff, his cousin, Ismail Abuhaltam (" Ismail"). These recordings are publicly available at www.aymanvsismail.us. This letter is a federal crime—**Witness Tampering under 18 U.S.C. § 1512**—and it is the most recent and damning piece of evidence that demolishes Ayman's entire four-year campaign of judicial terrorism in one concise blow.
>
> 2. The letter contains a fatal contradiction that amounts to a signed confession. For years, Ayman has built a house of cards on a single, foundational lie: "The voice in the recordings is not mine." He filed four malicious lawsuits based on this lie. Yet, in his November 21st letter, he demands that a witness, under threat of litigation, retract his sworn testimony identifying that very voice. The question is simple: **If the voice was never yours, why threaten a witness to stop saying it is?** This act is an implicit, legally binding admission that the voice is his, and therefore, that every one of his lawsuits was based on fraud.
>
> 3. This Complaint will demonstrate that this act of witness tampering was not an isolated event, but the desperate, final act of a criminal whose multi-year conspiracy was collapsing. It was the direct result of Ismail's investigation into the 69 recordings, which exposed a 40-year criminal enterprise and led to a global campaign of incitement against him, culminating in a **failed assassination attempt on August 3, 2024**. Ayman's letter is the smoking gun that proves his consciousness of guilt for the entire causal chain of crimes.
>
> 4. This action seeks justice for this relentless campaign of terror, orchestrated by Ayman against his own cousin. It asserts ten causes of action, with Witness Tampering now taking center stage as the undeniable proof of Ayman's culpability for all of them. We will use Ayman's own words, in his 69 recordings and his one self-destructive letter, to hold him accountable.

(*Id.*, PageID.2–3.) The demonstrated pattern of conclusory statements, strained inferences, and argument is repeated throughout the complaint and even in the hundreds of pages of attached exhibits. When whittled down to just the facts, the allegations with regard to Plaintiff's remaining claims—the state torts of intentional infliction of emotional distress and civil conspiracy—accepted as true and construed in a light most favorable to Plaintiff, do not "'nudge' his claim . . . 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Intentional infliction of emotional distress

As this Court stated in *Lothamer Tax Resolution, Inc. v. Kimmel*, No. 1:25-cv-579, 2025 WL 3300058 (W.D.Mich. Oct. 21, 2025), *R&R adopted in relevant part*, 2025 WL 3481868 (Dec. 2, 2025), to properly state an intentional infliction of emotional distress claim, a plaintiff must allege the following elements:

> (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 824–25 (6th Cir. 2012) (citing *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 321 (2010)). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1948)). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v. Mills*, 212 Mich. App. 73, 91 (1995) (citing *Linebaugh v. Sheraton Mich. Corp.*, 198 Mich. App. 335, 342 (1993)).

*Lothamer Tax*, 2025 WL 3300058, at *19.

In analyzing Plaintiff's allegations with respect to this claim, it is important to keep in mind that neither the statements in the 69 audio recordings, the purported "malicious lawsuits," nor the alleged witness tampering will be considered under the *Rooker-Feldman* doctrine. That leaves only the incitement to violence. Certainly, the facts alleged and documents submitted regarding the violent attack on Plaintiff during August of 2024 might be deemed extreme and outrageous conduct. Moreover, the facts alleged support the inference that the attack caused Plaintiff significant emotional distress. But when one sets aside the Plaintiff's conclusory allegations and unsupportable inferences, it is clear that he conflates the far from veiled threats by Abboud Al-Qawasmi to the effect that he would locate Plaintiff in Michigan and "determine [Plaintiff's] life," on the one hand, with the subsequent Abuhaltam family "disowning" of Plaintiff,

on the other hand. Plaintiff alleges facts that support an inference that Ayman may have participated in the latter, but not the former. Indeed, in Plaintiff's submissions to the Indiana courts he clearly attributes the unveiled threats of violence to Al-Qawasami, not Ayman. In other words, Plaintiff fails to state any facts that connect the "outrageous" conduct with an intentional (or reckless) act by Defendant. Accordingly, Plaintiff's intentional infliction of emotional distress claim is properly dismissed for failure to state a claim.

### B. Civil conspiracy

In *Qualite Sports Lighting, LLC v. Ortega*, No. 1:17-CV-607, 2019 WL 7582823 (W.D.Mich. Sept. 10, 2019), this Court explained the elements of the state law tort of civil conspiracy as follows:

> In Michigan, the elements of civil conspiracy are: (1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose or a lawful purpose by unlawful means. *Mays v. Three Rivers Rubber Corp.*, 352 N.W.2d 339, 341 (Mich. Ct. App. 1984). A plaintiff alleging civil conspiracy, however, must allege more than a mere conspiracy; the plaintiff must allege a wrong resulting in damages. *Magid v. Oak Park Racquet Club Assoc.*, 269 N.W.2d 661, 664 (Mich. Ct. App. 1978). If the plaintiff cannot show that a wrongful act entitles it to damages, then it cannot demonstrate civil conspiracy because a civil conspiracy is not itself a cause of action. *Roche v. Blair*, 9 N.W.2d 861, 863–64 (Mich. 1943); *see also Early Detection Center, PC v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) ("[A] claim for civil conspiracy may not exist in the air; rather it is necessary to prove a separate, actionable, tort.").

*Qualite Sports*, 2019 WL 7582823, at *9. Moreover, "it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016).

Plaintiff's civil conspiracy allegations consist of the following two sentences:

> Defendant conspired with over 100 individuals to silence, defame, and harm the Plaintiff, culminating in a failed assassination attempt on August 3, 2024. This conspiracy was triggered by Plaintiff's investigation into the 69 audio recordings

> (publicly accessible at www.aymanvsismail.us ), which exposed a 40-year criminal enterprise.

(Compl., ECF No. 1, PageID.8.) The "silencing" or "defaming" as the relevant unlawful conduct are clearly based on attributing the 69 audio recordings to Plaintiff. Success on such a conspiracy claim effectively reverses the state court and would run afoul of the *Rooker-Feldman* doctrine. That is not the case with regard to Plaintiff's claimed assassination attempt. The allegations still fall short, however, because the only non-conclusory allegations regarding concerted action relate to the Abuhaltam family disowning Plaintiff. Although Plaintiff conflates that with the assassination attempt, he does not allege facts that reasonably support that inference. To the contrary, Plaintiff connects the threat of that unlawful conduct to Al-Qawasami in the days preceding the "Blood Festival." Accordingly, Plaintiff's civil conspiracy claim falls short of the specificity necessary to state a claim.

## IV. Recommendation

For these reasons, I respectfully recommend that Plaintiff's motion to supplement, construed as a motion to amend, be denied as unnecessary and that the Court consider Plaintiff's initial complaint and the proposed supplement as the operative complaint. I also recommend that the Court dismiss without prejudice for lack of subject matter jurisdiction Counts I, II, III,[7] IV, V, and IX, along with those parts of Counts VIII and X that rely on a Plaintiff's assertion that it is Defendant Ayman's voice on the audio recordings, under the *Rooker-Feldman* doctrine. I further recommend that the Court dismiss without prejudice for lack of subject matter jurisdiction Counts VI and VII, as amended, because of the preclusive effect of the judgment in Case No. 1:26-cv-1

---

[7] To the extent that the Court dismisses Count III, it should also deny Plaintiff's motion for temporary restraining order and preliminary injunction (ECF No. 3) which seeks the same relief.

(W.D. Mich.). Finally, for those parts of Counts VIII and X and that are not impacted by the *Rooker Feldman* doctrine, I recommend that the Court dismiss them for failure to state a claim.

Dated: August 18, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).